**KOLLER LAW LLC**
David M. Koller, Esq. (037082002)
Jordan D. Santo, Esq. (152892015)                    *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **DAVID MOBLEY,** | : | Civil Action No. |
| **109 Allens Lane** | : | |
| **Mullica Hill, NJ 08062** | : | |
|       **Plaintiff,** | : | |
| | : | |
|     v. | : | **Complaint and Jury Demand** |
| | : | |
| **APPLE AMERICAN GROUP, LLC d/b/a** | : | |
| **APPLEBEE'S GRILL & BAR,** | : | |
| **1102 Route 73 South** | : | |
| **Mt. Laurel, NJ 08054** | : | |
| | : | |
| **6200 Oak Tree Boulevard, Suite 250** | : | |
| **Villanova, PA 19085** | : | |
|       **Defendant.** | : | |

### CIVIL ACTION

Plaintiff, David Mobley (hereinafter "Plaintiff"), by and through his attorney, Koller Law, LLC, bring this civil matter against Apple American Group, LLC d/b/a Applebee's Grill & Bar (hereinafter "Defendant"), for violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and the Pennsylvania Human Relations Act ("PHRA"). In support thereof, Plaintiff avers as follows:

### **THE PARTIES**

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing at the above captioned address.

3. Upon information and belief, Apple American Group LLC d/b/a Applebee's Grill & Bar is a franchisee of Applebee's restaurants with a location at 1102 Route 73 South, Mt. Laurel, NJ 08054 and with a corporate headquarters located at 6200 Oak Tree Boulevard, Suite 250, Independence, OH 44131.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States

and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the District of New Jersey pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendants is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted his administrative remedies under Title VII and PHRA.

13. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging race discrimination and retaliation against Defendant.

14. The Charge was assigned a Charge Number 530-2021-04842 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated August 18, 2022. Plaintiff received the notice by electronic mail.

16. Prior to the filing of this action, Plaintiff notified the EEOC of his intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of his receipt of his Right to Sue in this matter.

18. Plaintiff has exhausted his administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

## PLAINTIFF'S EMPLOYMENT HISTORY

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. Plaintiff is an African American male.

21. In April 2019, Defendant hired Plaintiff in the position of Assistant Manager.

22. Plaintiff was well qualified for his position and performed well.

23. Plaintiff worked at multiple locations at Defendant throughout his employment.

24. In October 2020, Defendant transferred Plaintiff to its Vineland, NJ location.

## PLAINTIFF'S COWORKERS FREQUENTLY USED THE N-WORD AT DEFENDANT

25. Shortly after his transfer, Plaintiff began to notice that multiple employees, including, but not limited to, Rayquan LNU (African American), Cook, Alfonso LNU (African American), Cook, Jared LNU (African American), Cook, and Juan LNU (Hispanic), Cook, frequently used the N-word.

26. Plaintiff was offended by the constant and wanton use of this racial slur.

27. Members of management, including, but not limited to, Valerie Sampona (Caucasian), General Manager, and Marke LNU (Caucasian), manager, witnessed the frequent use of the N-word, but refused to address it.

28. Employees continued to frequently use the N-word at Defendant.

## PLAINTIFF COMPLAINED ABOUT THE INCESSANT USE OF THE N-WORD AT DEFENDANT, BUT HIS COMPLAINT WAS NOT ADDRESSED

29. In December 2020, Plaintiff complained to Ms. Sampona about the frequent use of the N-word at Defendant.

30. However, Ms. Sampona denied that it occurred and refused to address Plaintiff's complaint.

## MS. SAMPONA RETALIATED AGAINST PLAINTIFF BY NOT ALLOWING HIM TO DISCIPLINE EMPLOYEES, BUT SPECIFICALLY INSTRUCTED HIM TO DISCIPLINE AFRICAN AMERICAN MALE EMPLOYEES

31. Following Plaintiff's complaint, Ms. Sampona refused to give Plaintiff authorization to discipline insubordinate employees towards him.

32. This effectively hampered Plaintiff's ability to perform his job duties.

33. However, when Ms. Sampona did instruct Plaintiff to issue a discipline, she specifically instructed him to discipline African American male employees.

34. Plaintiff believed this direction to be racially motivated.

## PLAINTIFF AND MS. SAMPONA OVERHEARD COWORKERS USING THE N-WORD, BUT NOTHING WAS DONE TO ADDRESS IT

35. In or around June 2020, Plaintiff overheard his coworkers using the N-word at Defendant.

36. Ms. Sampona also witnessed this.

37. Plaintiff proceeded to complain to Ms. Sampona again about the use of the racial slur, but Ms. Sampona denied that it was said, stating, "We don't say that here," and refused to properly address Plaintiff's complaint.

## PLAINTIFF COMPLAINED AGAIN ABOUT THE FREQUENT USE OF THE N-WORD AT DEFENDANT, BUT IT CONTINUED

38. Shortly afterwards, Plaintiff complained to Margie Doyle (Caucasian), Area Director, about the use of the N-word at Defendant and Ms. Sampona's refusal to address his complaint.

39. Ms. Doyle suggested that Plaintiff have a meeting with her and Ms. Sampona to discuss his complaint.

40. Plaintiff declined Ms. Doyle's suggestion because he feared further retaliation.

41. Upon information and belief, Ms. Doyle took no other action to address Plaintiff's complaint.

42. Employees at Defendant continued to regularly use the N-word.

## PLAINTIFF SUBMITTED HIS RESIGNATION DUE TO DEFENDANT'S FAILURE TO ADDRESS THE PERSISTANT USE OF THE N-WORD

43. On or around June 21, 2021, Plaintiff submitted his resignation to Ms. Sampona due to the racial discrimination at Defendant and Defendant's failure to address his reported complaints, effective July 20, 2021.

44. The following day, Plaintiff met with Ms. Doyle and discussed the reasons for his resignation.

## DEFENDANT ABRUPTLY TRANSFERRED PLAINTIFF AND SET HIM UP FOR FAILURE IN RETALIATION FOR HIS COMPLAINTS OF THE USE OF THE N-WORD AT DEFENDANT

45. On June 30, 2021, Ms. Doyle called Plaintiff on his day off and informed him that he was being transferred to Defendant's Mt. Laurel location effective immediately.

46. Plaintiff believed that his transfer was retaliatory as it added a substantial commute for him and upon information and belief, Defendant did not have a legitimate business reason to transfer him to a different location for the last couple of weeks of his employment.

47. In addition, while at Defendant's Mt. Laurel location, Debbie LNU (biracial), Assistant Manager, was incredibly rude to staff and customers, and did not perform the job duties that she shared with Plaintiff.

48. Plaintiff complained about this to Paul LNU (Caucasian), General manager, Ed LNU (Caucasian), Market Director, and Ms. Doyle.

49. However, they did not address Plaintiff's complaints.

50. Plaintiff felt that Defendant was setting him up for failure by having him work with Debbie, so that it could blame him for duties that she did not perform.

## **PLAINTIFF WAS CONSTRUCTIVELY DISCHARGED**

51. On July 20, 2021 was Plaintiff's last day.

52. Plaintiff was constructively discharged.

53. It is Plaintiff's position that he was discriminated against due to his race and retaliated against for complaining about the aforementioned discrimination in violation of Title VII and the PHRA.

## **COUNT I – RACE DISCRIMINATION**
## **TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED**

54. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

55. Plaintiff is a member of protected classes in that he is African American.

56. Plaintiff was qualified to perform the job for which he was hired.

57. Plaintiff suffered adverse job actions, including, but not limited to constructive discharge.

58. Similarly situated people outside of Plaintiff's protected class were treated more

favorably than Plaintiff.

59. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

60. Defendants discriminated against Plaintiff on the basis of race.

61. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

62. The reasons cited by Defendants for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT II – RACE DISCRIMINATION
### PENNSYLVANIA HUMAN RELATIONS ACT

63. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

64. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of his race (African American).

65. As a result of Defendants' unlawful race discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT III – RETALIATION
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

66. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

67. Plaintiff engaged in protected activity protected by Title VII when he complained to about the frequent use of racial slurs.

68. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, constructive discharge.

69. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT IV – RETALIATION
## PENNSYLVANIA HUMAN RELATIONS ACT

70. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

71. Plaintiff engaged in activity protected by the PHRA when he complained to his supervisor about the frequent use of racial slurs.

72. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, constructive discharge.

73. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, David Mobley, requests that the Court grant him the following relief against Defendants:

(a) Compensatory damages;

(b) Punitive damages;

(c) Liquidated damages;

(d) Emotional pain and suffering;

 (e)  Reasonable attorneys' fees;

 (f)  Recoverable costs;

 (g)  Pre and post judgment interest;

 (h)  An allowance to compensate for negative tax consequences;

 (i)  A permanent injunction enjoining Defendants, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the Title VII and the PHRA.

 (j)  Order Defendants to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

 (k)  Order Defendants to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

 (l)  Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## **JURY TRIAL DEMAND**

Demand is hereby made for a trial by jury as to all issues.

## **CERTIFICATION**

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

 

|  |  |  |
|---|---|---|
|  |  | **RESPECTFULLY SUBMITTED,** |
|  |  | **KOLLER LAW, LLC** |
| Date: November 16, 2022 | **By:** | */s/ David M. Koller* |
|  |  | David M. Koller, Esquire |
|  |  | Jordan D. Santo, Esquire |
|  |  | 2043 Locust Street, Suite 1B |
|  |  | Philadelphia, PA 19103 |
|  |  | 215-545-8917 |
|  |  | davidk@kollerlawfirm.com |
|  |  | jordans@kollerlawfirm.com |
|  |  | *Counsel for Plaintiff* |